IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| K.H. and V.H., Individual and as Next Friends of S.H., a Minor, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 1:23-CV-00451 |
| BEAUMONT INDEPENDENT SCHOOL DISTRICT; GREEN DOT PUBLIC SCHOOLS SOUTHEAST TEXAS; and KELLY SERVICES, INC., | § § § § § § | JUDGE MICHAEL J. TRUNCALE |
| Defendants. | § | |

## ORDER GRANTING DEFENDANT KELLY SERVICES, INC'S MOTION TO DISMISS AND GRANTING DEFENDANT GREEN DOT PUBLIC SCHOOLS SOUTHEAST TEXAS'S MOTION TO DISMISS

Before the Court is Defendant Kelly Services, Inc. ("Kelly")'s Motion to Dismiss [Dkt. 18] and Defendant Green Dot Public Schools Southeast Texas ("Green Dot")'s Motion to Dismiss [Dkt. 22]. [1] For the following reasons, Kelly's Motion is **GRANTED** and Green Dot's Motion is **GRANTED**.

### I.   BACKGROUND

This litigation arises out of allegations of a teacher-on-student sexual harassment incident and a cover-up that happened at Martin Luther King Middle School, a Texas public charter school led by Green Dot in partnership with Beaumont Independent School District ("BISD"). [Dkt. 2 at ¶¶ 8–15]. According to the operative Original Petition ("Complaint"), Plaintiff S. H. ("the Minor Plaintiff") suffered two sexual harassments on two consecutive days at the hands of Malcolm Motton, an ex-

---

[1] Although entitled a "Motion to Dismiss," Green Dot states that its motion "may also be construed as a motion for judgment on the pleadings pursuant to Rule 12(c), which calls for the same legal analysis as a Rule 12(b)(6) motion." *Id.* at 1. The Court's scheduling order permitted the Defendants to file amended pleadings without leave of Court until May 20, 2024. [Dkt. 12 at 1]. Kelly filed its motion on May 9, 2024, falling within the scheduling order as a pleading. [Dkt. 18]. Green Dot filed its motion on August 1, 2024, after the amended pleading deadline. [Dkt. 22]. Accordingly, the Court will construe Kelly's motion as a motion to dismiss pursuant to Rule 12(b)(6) and Green Dot's motion as a motion for judgment on the pleadings pursuant to Rule 12(c), both of which entail the same legal analysis. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (citation omitted).

teacher of hers. *Id.* at ¶ 10. Specifically, the Complaint states that Motton "rubbed up and down on S.H.'s bottom" during her fourth period class. *Id.* The Complaint further charges that Motton approached the Minor Plaintiff when she was in the cafeteria; grabbed and squeezed her breasts as he "zipped up her jacket"; and said, "Why do you wear tight pants? I can see your pussy print." *Id.*

The Minor Plaintiff reported to school principal Julia Rich, who told her that she would review the surveillance footage and call her parents. *Id.* at ¶ 11. That allegedly never happened—the Parent Plaintiffs were unaware of the incident until their daughter finally told them. *Id.* The Parent Plaintiffs supposedly visited the school and were told that Rich did not call them because "'something important' had come up." *Id.* The Parent Plaintiffs claim that, during the ensuing meeting, Rich told them that Motton was already fired. *Id.* at ¶ 12. The Parent Plaintiffs allegedly filed a report with the BISD Police Department, allowing them to watch the relevant footage and the Minor Plaintiff to provide written statements. *Id.* ¶ 13. About two weeks later, the Parent Plaintiffs supposedly reported the sexual harassments to the Texas Child Protective Services ("TCPS"). *Id.* at ¶ 14. The Parent Plaintiffs allege that Rich neglected to inform them of BISD's Title IX protocols and policies. *Id.* at ¶ 12. Their subsequent investigation allegedly also revealed that Rich reported the incidents to neither the law enforcement, the TCPS, nor a Title IX coordinator. *Id.* Further, the footage that the Parent Plaintiffs watched is now supposedly missing. *Id.* at ¶ 13.

Based on these facts, the Parent Plaintiffs brought state suit about two years later against BISD, Green Dot, and Kelly. [Dkt. 2]. BISD removed for diversity about a month later [Dkt. 1] and filed a motion to dismiss [Dkt. 11], which the Court granted [Dkt. 24]. Kelly filed its Motion on May 9, 2024. [Dkt. 18]. Even after an Order to Respond [Dkt. 20], Plaintiffs have not responded to Kelly's Motion. Green Dot filed its Motion on August 1, 2024, [Dkt. 22], and Plaintiffs timely responded [Dkt. 26].

## II.    LEGAL STANDARDS

A court may dismiss a complaint for its "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Furthermore, "[a]fter the pleadings are closed—but early enough

not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions under Rules 12(b)(6) and 12(c) utilize the same analysis. *Great Plains Trust Co.*, 313 F.3d at 313 n.8 ("Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same." (citation omitted)).

In evaluating a 12(b)(6) or 12(c) motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (per curiam) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). At the same time, the Court must "not accept . . . conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citations omitted).

To survive a 12(b)(6) or 12(c) challenge, a complaint must allege "enough [well-pleaded] facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain[] . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). A claim is "plausible on its face" if its well-pleaded facts lead to "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). In contrast, "if a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (cleaned up).

Determining whether a plausible claim exists is "a context-specific task that requires the . . . court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

### III.    DISCUSSION

After considering the Motions, record, and relevant law, the Court **GRANTS** Kelly and Green Dot's Motions.

#### A.  Kelly's Motion to Dismiss

The Court grants Kelly's Motion as the Parent Plaintiffs failed to respond to their motion and

fail to allege any facts connecting Kelly to the facts of the suit.

Eastern District of Texas Civil Local Rule 7(d) states in relevant part: "A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." E.D. Tex. Civ. R. 7(d). A party opposing a motion to dismiss has fourteen days from the date the motion was served to file a response. E.D. Tex. Civ. R. 7(e). A party may move the court for an extension of time in which to respond. *Id.*

Here, Kelly filed its Motion to Dismiss on May 9, 2024, [Dkt. 18], making the Plaintiffs' response due on May 23, 2024. *See* E.D. Tex. Civ. R. 7(e). After failing to respond, the Court provided the Plaintiffs with the opportunity to respond by ordering them to respond to Kelly's motion on or before July 23, 2024. [Dkt. 20]. Plaintiffs nevertheless failed to file a response. The Court has the liberty to consider the Motion as essentially unopposed. *See* E.D. Tex. Civ. R. 7(d).

The Court finds it has good reason to grant Kelly's Motion. First, the Plaintiffs only allege state law claims against Kelly, namely negligence; negligent hiring, supervising, training and/or retention; respondeat superior; and gross negligence. [Dkt. 2 at 5, 8–10]. In their responses to BISD and Green Dot's motions to dismiss, the Plaintiffs expressed their non-opposition to dismissing the state law claims against them. [Dkt. 16 at 2; Dkt. 26 at 2]. The Court sees no reason why the same sentiment would not extend to Kelly.

Second, Plaintiffs fail to allege any facts that connect Kelly with their claims. In their general factual allegations, Plaintiffs omit any mention of Kelly and state that Martin Luther King Middle School, where K.H. alleges she was sexually assaulted by her teacher, "is led by Green Dot Public Schools Southeast Texas in partnership with Beaumont Independent School District." [Dkt. 2 at ¶ 8]. Additionally, in each of their allegations against Kelly, the Plaintiffs use legal buzz words included in each *element* of the state-law claims, but they fail to provide a single *fact* that indicates that Kelly was connected to the incidents alleged in the lawsuit, let alone that they had any control over the hiring

4

process of individuals at K.H.'s middle school at the time of the alleged incidents. *See generally* [Dkt. 2]. Therefore, the Court finds that the Plaintiffs failed to allege any well-pleaded facts to support any plausible relief. *See Ashcroft*, at 679.[2]

For these reasons, the Court **GRANTS** Kelly's motion and **DISMISSES THE CLAIMS AGAINST IT WITH PREJUDICE**.

### B. Green Dot's Motion to Dismiss

Green Dot argues that the Plaintiffs fail to properly allege their state-law and Title IX claims under Rule 12(b)(6). [Dkt. 22 at 2–9].[3] In response, the Plaintiffs state that they "do not oppose the dismissal of their state law negligence claims against Green Dot." [Dkt. 26 at 2]. Plaintiffs do, however, oppose Green Dot's motion to dismiss their Title IX claim. *Id.* For the following reasons, the Court grants Green Dot's Motion.

#### 1. Standing

The Court first holds that the Parent Plaintiffs lack standing to seek personal damages under Title IX. *See Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1009 n.4 (5th Cir. 1996), *overruled on other grounds Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. Educ.*, 526 U.S. 629 (1999); *Ashcroft*, 556 U.S. at 679.

---

[2] Kelly also argues that it was improperly joined as a defendant, as Plaintiffs acknowledged in their Rule 26(f) joint report that another company—not Kelly—supplied the substitute teachers to Green Dot under contract as needed. [Dkt. 7 at 2; Dkt. 18 at 18]. Although one of the analyses for improper joinder is the same as a 12(b)(6) motion, improper joinder is an argument challenging the Court's subject matter jurisdiction after a case has been removed to federal court, which Kelly here does not challenge. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) ("The starting point for analyzing claims of improper joinder must be the statutes authorizing removal to federal court of cases filed in state court."); *id.* at 573 ("The doctrine of improper joinder rests on these statutory underpinnings, which entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.' Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case.").

[3] The Court notes that Green Dot does not raise a standing challenge like BISD did in its motion to dismiss. *Compare* [Dkt. 11 at 12–13 (BISD's Motion to Dismiss)] *with* [Dkt. 18 (Green Dot's Motion to Dismiss)]. Green Dot explains that it essentially raised the same argument "but couched it in terms of Plaintiffs' failure to state a Title IX claim rather than lack of 'standing.'" [Dkt. 29 at 3]. They argue that this is because statutory standing under Title IX confers a cause of action on a particular plaintiff, which is a question of the legal merits, not Article III standing, which is an issue of judicial *power*. *Id.* at 3–4. To ensure a thorough opinion, the Court nevertheless analyzes standing as it did in its Order granting BISD's motion to dismiss. [Dkt. 24 at 5–6].

A parent "does not have standing to assert a personal claim under [T]itle IX," as "nothing in the statutory language provides [him or] her with a personal claim . . . ." *Rowinsky*, 80 F.3d at 1009 n.4. "Even assuming that [T]itle IX protects persons other than students and employees," a parent must "assert that [he or she] was excluded from participation, denied the benefits of, or subjected to discrimination under an[] education program or activity." *Id.* "Absent such a claim, the plain language of [T]itle IX does not support a cause of action by [a parent]." *Id.*

Here, the Parent Plaintiffs cannot seek recovery for themselves under Title IX. Indeed, the Complaint charges that Green Dot's alleged Title IX violation "was the proximate cause of [the] *Plaintiffs'* harm" and that "[the] *Plaintiffs'* suffered damages as a result." [Dkt. 2 at ¶ 33] (emphases added). Consistent with the Court's order applied to BISD, the Court finds that the Parent Plaintiffs lack standing to assert Title IX claims against Green Dot and thus cannot seek recovery for themselves under Title IX. *See* [Dkt. 24 at 5–6]; *Rowinsky*, 80 F.3d at 1009 n.4.

**2. Title IX Claim**

The Court also rules that the Parent Plaintiffs, individually and as next friends of the Minor Plaintiff, fail to state a plausible claim for relief under Title IX because their theory against Green Dot is framed as one for negligence. *See Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020); *Ashcroft*, 556 U.S. at 679.

In pertinent part, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The prohibition of discrimination on the basis of sex includes sexual harassment and abuse. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992).

Title IX is a product of Congress's spending power, and it operates like a contract between the Government and the recipients of funds: the Government offers funding in exchange for the recipient's promise not to discriminate. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286–

87 (1998); *see* U.S. Const. art. I, § 8, cl. 1 ("The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States . . . ."). While the statute's text does not provide an express private right of action, individuals may seek enforcement of Title IX, including monetary damages, through an implied private right of action. *Gebser*, 524 U.S. at 280–81 (first citing *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979), and then citing *Franklin*, 503 U.S. 60). Therefore, "[a] school district receiving federal funds may be held liable under Title IX via a private action for damages when its employees sexually abuse students." *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 775 (5th Cir. 2020) (per curiam) (citing *Gebser*, 524 U.S. at 281). But given Title IX's contractual nature, and that Congress did not speak to the bounds of private recovery, a plaintiff may recover damages against a school district only if the school district had actual knowledge of the sexual discrimination. *Gebser*, 524 U.S. at 285. Constructive notice does not suffice, and agency theories of liability do not apply. *Id.* "Title IX precedent creates a 'high bar' to hold school districts liable for the unlawful acts of school employees." *M.E.*, 840 F. App'x at 776 (quoting *Howell v. Austin Indep. Sch. Dist.*, 323 F. App'x 294, 295 (5th Cir. 2009) (per curiam)).

   Therefore, a school district that receives federal funding cannot be liable in damages for a teacher's sexual harassment of a student unless: (1) an official with authority to address the alleged discrimination and institute corrective measures had *actual* knowledge of the discrimination; and (2) the official responded to the knowledge with deliberate indifference. *Edgewood*, 964 F.3d at 358–59 (citing *Gebser*, 524 U.S. at 290). The first prong is fulfilled if the official with authority "actually knew that there was a substantial risk that sexual abuse would occur." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 652–53 (5th Cir. 1997). The second prong is fulfilled if the plaintiff can demonstrate that the school responded with "deliberate indifference" to an "opportunity for voluntary compliance." *Edgewood*, 964 F.3d at 358. Importantly, negligence does not rise to the level of "deliberate indifference" necessary to meet the "high bar" of alleging a violation of Title IX.

*See Davis*, 526 U.S. at 642 ("[W]e declined the invitation to impose liability under what amounted to a negligence standard . . . . Rather, we concluded that the district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge." (citing *Gebser*, 524 U.S. at 283, 290)); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) ("[N]either negligence nor mere unreasonableness is enough" to meet the high bar); *Doe v. Dall. ISD*, 153 F.3d 211, 219 (5th Cir. 1998) ("[A]ctions and decisions by officials that are merely inept, erroneous, inefficient, or negligent[] do not amount to deliberate indifference . . . .").

Here, the Parent Plaintiffs, individually and as next friends of the Minor Plaintiff, allege a Title IX theory as one for negligence. [Dkt. 2 at ¶ 33]. They allege that Green Dot "had a duty to protect [the Minor Plaintiff] from harm"; "breached that duty by failing to take reasonable steps to prevent or address the sexual harassment and . . . report[] the [incident] to authorities and a Title IX Coordinator"; and caused harm to the Minor Plaintiff, who "suffered damages as a result." *Id.* This framework is more akin to a claim found in an ordinary negligence case, not a Title IX one. *See Edgewood*, 964 F.3d at 358; *Davis*, 526 U.S. at 642; *Sanches*, 647 F.3d at 167; *Dall. ISD*, 153 F.3d at 219.

Accordingly, the Court grants the Motion as to the Title IX cause of action.

### IV. CONCLUSION

It is therefore **ORDERED** that Kelly Services Inc.'s Motion to Dismiss [Dkt. 18] is hereby **GRANTED**. All causes of action against Kelly are **DISMISSED WITH PREJDUICE**. The Clerk is **INSTRUCTED** to terminate Kelly has a Defendant.

It is further **ORDERED** that Green Dot Public Schools Southeast Texas's Motion to Dismiss [Dkt. 22] is **GRANTED**. All causes of action against Green Dot **DISMISSED WITH PREJDUICE**. The Clerk is **INSTRUCTED** to terminate Green Dot has a Defendant.

It is further **ORDERED** that all Court dates and deadlines are hereby **VACATED** and that all pending motions herein are **DENIED AS MOOT**.

This constitutes a **FINAL JUDGMENT**, and the Clerk is **INSTRUCTED** to close this matter.

**SIGNED this 19th day of December, 2024.**

*Michael J. Truncale*
Michael J. Truncale
United States District Judge